HARRIETT L. CRAWFORD

*v.*

THE NORTHWESTERN TRAVELING MEN'S ASSOCIATION.

*Opinion filed February 21, 1907—Rehearing denied April 3, 1907.*

1. INSURANCE—*act of 1893, relating to assessment companies, does not apply to corporations then existing.* The act of 1893, relating to assessment companies, (Laws of 1893, p. 117,) does not apply to companies in existence when the act was passed, unless they take the steps provided for in section 6 of that act to re-incorporate under its provisions.

2. SAME—*when provisions of act of 1893 do not become part of member's contract.* Changing the constitution and by-laws of an assessment company organized under the act of 1872 so as to create the emergency fund provided for in the act of 1893, does not render the provisions of the act of 1893 a part of the contract of a member who joined the association prior to such action, where no steps were taken to re-incorporate under the act of 1893.

3. CONTRACTS—*rule as to statutes being a part of contract.* The rule that the law writes into every contract the provisions of the statutes that are applicable to the transaction refers only to statutes existing at the time the contract was made, and not to subsequent statutes such as would abrogate or impair the contract.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

Appellant, Harriet L. Crawford, filed her bill in the superior court of Cook county against the appellee, the Northwestern Traveling Men's Association, for an accounting of certain funds of appellee known as the emergency fund, and for the recovery of a balance which she claimed was due her as beneficiary upon a certificate of insurance issued to her husband, John W. Crawford. Upon issue being joined the cause was heard by the chancellor in open court upon an agreed statement of facts, the principal and material points of which are as follows:

Appellee is a corporation not for pecuniary profit, organized in July, 1876, under an act of the General Assembly approved April 18, 1872, entitled "An act concerning corporations." Its business was to provide pecuniary aid to widows, orphans, heirs and devisees of deceased members. John W. Crawford was admitted to membership July 9, 1881, and a certificate issued to him. At that time the constitution of appellee provided that upon the death of a member the board of directors should order an assessment of two dollars upon each member, and upon suitable proof of death they should pay to the beneficiary, out of the amount thus collected, a sum not to exceed $5000. In December, 1897, the constitution was amended so as to provide that members who were admitted to the association after the first of January, 1890, were to be graded, according to age, into five grades or classes, and whenever an assessment was ordered to pay a death benefit, each member was to be assessed according to his grade and the denomination of his membership certificate or certificates. All members admitted prior to January 1, 1890, were to pay two dollars upon each assessment and were to receive in benefits a sum not exceeding $4000. By the same amendment, and for the purpose of providing and maintaining an emergency fund, the board of directors were empowered to order an assessment upon each member equal in amount to one mortuary assessment, and the amount so collected was to be placed in the emergency fund, and whenever, as the result of an assessment to pay a death loss, there was collected an amount in excess of the amount required to pay such death loss, such excess or surplus was to form a part of and be transferred to the emergency fund. Upon the payment of any mortuary claim the beneficiary was to receive, in addition to other payments to which he might be entitled, any unexpended portion of any authorized emergency fund assessment which the deceased member may have paid, but without any portion of the accumulated interest thereon. In October, 1903, Craw-

ford, while in good standing, departed this life, and his son, John M. Crawford, acted as the agent of the beneficiary in the collection of the amount due.   He notified the association of the death of his father and was furnished blanks upon which to make proof of death.   On the first of December the board of directors ordered an assessment, known as No. 705. On the first Monday in January, 1904, they ordered the treasurer to pay the beneficiary the amount collected on the assessment, the same to be in full of all claims and demands and amounting to $2446.80, which was $430 less than would have been collected had every member paid.   A question arose between the secretary of the corporation and Crawford with reference to the amount being in full.   It was claimed by Crawford that the certificate called for $4000 and that should be the amount paid.   The receipt, however, was subsequently signed and a check for the amount forwarded to and accepted by the complainant.   Afterwards $53.10 was paid to her, and checks accepted, endorsed and collected by her for that sum.

It is agreed that because of the provisions of section 8 of chapter 73 of our statutes, requiring all assessment companies to "accumulate and maintain a reserve or emergency fund equal to such sum as might be realized from one assessment,   *   *   *   and in no event less than its maximum policy or certificate," in December, 1897, an emergency fund was created, to which John W. Crawford, during his lifetime, contributed, the same as other members of said association, the sum of eight dollars; that under the constitution and by-laws of the association the board of directors have borrowed temporarily from this fund to pay a death loss, the amount so withdrawn being re-paid from a regular mortuary assessment; that the purpose of the provision of the constitution relative to borrowing temporarily was to equalize the number of mortuary assessments levied monthly, so as to prevent a large number of assessments in one month and a small number for another month; that in case of the

payment of a death loss from the emergency fund by borrowing, as aforesaid, the amount paid the beneficiary has at all times been determined by the board of directors by the amount collected from the mortuary assessment levied to pay the death loss of another deceased member where the death loss should have been levied and paid concurrently; that no beneficiary has ever been paid any amount from this emergency fund on account of any deficiency or failure to collect from a mortuary assessment levied to pay the death loss of some deceased member the maximum amount or limit provided by the constitution and by-laws of the association, and no suit has ever been instituted by any beneficiary by reason of such deficiency.

Upon the hearing the chancellor entered a decree in conformity with the allegations and prayer of the bill, to the effect that the defendant association had created and maintained an emergency fund in compliance with the requirements of the statute and its own by-laws, to which John W. Crawford, during his lifetime, contributed in like manner and to like extent as other members of the association; that such fund, at the date of the filing of the bill, amounted to more than $10,000; that Crawford was a member in good standing at the date of his death; that after proof of death had been made, $2499.90 was collected on assessment No. 705, which was paid over to the complainant, leaving a difference between the maximum amount to be paid on the death claim and the amount collected of $1500.10, which the court found was due and should be paid out of the emergency fund. An appeal was prosecuted to the Appellate Court, where the decree of the superior court was reversed and the cause remanded, with directions to dismiss the bill for want of equity. A further appeal has been prosecuted to this court.

MILLARD R. POWERS, and CARLOS S. HARDY, for appellant.

DOLPH, BUELL & ABBEY, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The first and controlling question for determination is whether the beneficiary of John W. Crawford was entitled to any part of the emergency fund mentioned in the statement of facts, in addition to the $2499.90 paid her. The certificate issued to Crawford, which became a contract between him and the association, entitled him to the proceeds of an assessment of two dollars per member, and in a sum not exceeding $5000, which was subsequently changed to $4000. The sum of $2499.90, it is admitted, has been levied, collected and paid, but it is contended by appellant that the act of 1893 should be read into and be made a part of the contract between the association and Crawford, and that by said act the association was required to accumulate and maintain a reserve or emergency fund equal to the amount of its maximum policy outstanding, and the assessment levied to pay Crawford's death claim being less than $4000, the balance should have been paid out of that fund.

The appellee corporation was organized under the act of 1872. Deceased became a member in 1881, and between those dates no substantial amendment was made to the law. The act of 1893 provides for the organization of corporations to be engaged in furnishing life or accident insurance on the assessment plan. (Hurd's Stat. 1893, chap. 73, p. 866.) That act is complete in itself, and not only applies to all corporations to be subsequently organized for that purpose, but extends to corporations already in existence, provided they comply with its requirements. Section 8 provides that every such corporation "shall accumulate and maintain a reserve or emergency fund equal to such sum as might be realized from one assessment on, or periodical payment by, policy or certificate holders thereof, and in no event less than the amount of its maximum policy or certificate. Such fund, if not already accumulated, shall be accumulated by every such existing corporation within six months from the time this act takes effect, and by every corporation here-

after formed under this act within six months from the date
of its incorporation, and shall be held for the purposes for
which such fund was created or accumulated.".

Appellee seems to have understood that said section ap-
plied to corporations already doing business as well as to
those to be subsequently organized, and that it was neces-
sary, under its provisions, to establish and maintain such
emergency fund, and in order to so provide, its constitution
and by-laws were changed in 1897 authorizing the board of
directors to order an assessment upon each member equal
in amount to one mortuary assessment, which was to be
placed in the emergency fund. It was thereby made the
duty of the treasurer from time to time to invest that money,
and he was thereby prohibited to pay out or encroach upon
the fund except by an affirmative vote of not less than five
of the members of the board of directors, and then only for
the payment of death losses or indigent claims. Clause 6 of
article 5 of the amended constitution provided that should
the amount collected on a death claim be less than the
prescribed limit upon any membership certificate such de-
ficiency *may* be paid from the emergency fund. Clause 7
provided that the directors might order one or more death
losses paid by borrowing from the emergency fund, which
amount was to be returned as soon as possible. Sections 1
and 2 of article 5 established different grades of members
and classes, whereby each member should be assessed ac-
cording to his grade and the denomination of his mem-
bership certificate, and upon proof of death an assessment
should be levied against each surviving member in accord-
ance with his grade, and the amount of the payment to be
made to the beneficiary was not to exceed $4000, and should
be the amount collected from the assessment levied and im-
posed upon the surviving members under and in pursuance
of the provisions of the constitution, which payment was to
be a complete and valid satisfaction and discharge of such
association of and from any and all claims which might arise

out of or be made against it for or upon such death loss. With these changes in the constitution and by-laws the agreement of Crawford with appellee remained the same from the time he became a member until the date of his death, unless it can be said that the provisions of the act of 1893 should be considered as a part of the contract.

We do not think the contention of appellant can be maintained. Section 6 of the act of 1893 provides that any existing domestic corporation may re-incorporate under the provisions of the act under its existing corporate name, by filing with the Auditor of Public Accounts a declaration of its desire to do so, signed and duly acknowledged by a majority of its board of directors, with a statement, in like manner signed and acknowledged by them, that such corporation, if insuring lives, has accumulated the fund required by section 8 of the act, and that such funds are safely held and invested for the purposes for which the same were accumulated. From this provision it would seem to have been the intention of the legislature to require corporations then in existence to take some affirmative action before they would be considered as coming within the provisions of the act. The latter part of the same section provides that it shall not be obligatory upon any such existing corporation to re-incorporate thereunder, and any such domestic corporation may continue to exercise all the rights, powers and privileges not inconsistent with the act, pursuant to its articles of incorporation, the same as if incorporated under the act. There is no pretense that the appellee corporation ever attempted to comply with the provisions of section 6, but it is admitted that it continued under its old corporation name to act as a corporation, and it would accordingly have the right to so continue except in so far as its rights, powers and privileges were inconsistent with the act.

It is insisted by counsel for appellant that the law writes into every contract the provisions of the statute that are applicable to the transaction. This is true only as to statutes

existing at the time the contract was made. Statutes subsequently passed cannot constitutionally abrogate or impair the obligation of contracts already in existence. We do not think the act of 1893 changed the relations existing between Crawford and the appellee corporation, or that he was entitled to any part of the emergency fund created by the amendment to the constitution and by-laws. What the real purpose of the amendment to the constitution and by-laws was,—whether to comply with the act of 1893 or not,—we have no means of knowing, but it did not have the legal effect of entitling a member to any part of the emergency fund. That fund seems to have been created for the purpose of making the assessments uniform, and to provide for distributing them so that they would not all come at the same time.

It is urged that while the legislature left it optional with existing corporations as to whether they should incorporate under the act, yet it did not leave them any option as to whether they would be controlled by the provisions of the act; also, that under section 15 it became the duty of every corporation to fix a definite amount to become due upon every outstanding certificate of insurance. What we have already said disposes of the question of the act being applicable to corporations doing business prior to 1893. It certainly cannot be claimed that the amendment to the constitution and by-laws rendered appellee liable for the additional amount. While it is true the by-laws create an emergency fund, as required by section 8, yet the amendment to the constitution and by-laws provided that if the amount collected from the assessments be less than the prescribed limit such deficiency *may* be paid from the emergency fund. The word "may" is used in its ordinary sense, leaving it optional with the board of directors to make such payment, and not mandatory. The constitution and by-laws made provision for the manner in which amendments to them might be made, and the amendment was made in accordance with

those provisions. It cannot be held that the law of 1893 became a part of the contract, and appellant cannot recover the additional amount.

It is insisted by appellee that the receipt executed by appellant, having been in full of all demands under the certificate, was sufficient to bar any further recovery against the association upon the ground that the amount involved was in dispute, and that the receipt constituted a valid settlement of the same. It is also contended by appellee that a court of equity was without jurisdiction, for the reason that appellant had an adequate remedy at law. If the assessment as levied was paid in full in accordance with the contract between the deceased and appellee, then there remained nothing to be paid, and it is unnecessary to consider the question of the effect to be given to the receipt or the jurisdiction of a court of equity.

What we have already said disposes of all the questions involved in the case.

We find no reversible error, and the judgment will be affirmed.                                    *Judgment affirmed.*